IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| ANNIE B. ADAMS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION 13-0329-WS-B |
| ) | |
| HOMEWARD RESIDENTIAL, INC., ) | |
| ) | |
| Defendant. ) | |

**ORDER**

This matter comes before the Court on defendant's Motion to Dismiss or, Alternatively, Motion for Summary Judgment (doc. 20). The Motion has been briefed and is ripe for disposition.

**I.   Relevant Background.**

Plaintiff, Annie B. Adams, brought this putative class action against defendant, Homeward Residential, Inc., alleging violations of certain provisions of the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 *et seq.* ("FDCPA"). According to the First Amended Complaint (doc. 19) (the "Complaint"),[1] Homeward contacted Adams on July 19, 2012 "by the use of a collection letter demanding payment in the amount of $29,421.90." (Doc. 19, ¶ 10.) The July 19 Letter (a copy of which is appended to the Complaint) notified Adams that Homeward "is attempting to collect a debt, and any information obtained will be used for that purpose." (*Id.*, ¶ 11.) The July 19 Letter also included the following text, which lies at the heart of Adams' FDCPA claims: "Unless you notify us within thirty (30) days after receiving this notice that you dispute the validity of this debt or any portion thereof, we will assume this debt is

---

[1]   For purposes of its Rule 12(b)(6) analysis, the Court accepts as true all well-pleaded factual allegations of the Complaint, and draws all reasonable inferences in the plaintiff's favor. *See, e.g., Keating v. City of Miami*, 598 F.3d 753, 762 (11th Cir. 2010) (in reviewing Rule 12(b)(6) motion, court must "accept[] the facts alleged in the complaint as true," "draw[] all reasonable inferences in the plaintiff's favor," and "limit[] our review to the four corners of the complaint").

valid.  If you notify us within thirty (30) days from receiving this notice that you dispute the validity of this debt or any portion thereof, we will obtain verification of the debt … and mail you a copy ….."  (*Id.*)  The Complaint specifically alleges that the July 19 Letter "was not Homeward's initial communication with Plaintiff and for several months prior Homeward sent Plaintiff other letters containing the same language."  (*Id.*, ¶ 15.)  However, it does not identify what Homeward's initial communication was or what it said on the topic of verification of the debt.

Adams pleads that Homeward violated the FDCPA because the July 19 Letter "fails to state that a consumer's dispute and verification request must be in writing in order to trigger her full rights under the FDCPA."  (*Id.*, ¶ 9.)  As alleged in the Complaint, plaintiff also predicates her FDCPA claim on the analytically distinct premise that the aforementioned statement in the July 19 Letter "is deceptive in that it mischaracterizes the dispute and verification rights granted a consumer under the FDCPA …."  (*Id.*, ¶ 21.)  The Complaint thus alleges that Homeward's form notice contravenes multiple provisions of the FDCPA, including 15 U.S.C. § 1692g(a)(4) and 15 U.S.C. § 1692e.  (Doc. 19, ¶¶ 9, 25.)[2]  In a nutshell, then, Adams' FDCPA claim is that Homeward was required to notify her that any dispute to the validity of the debt must be in writing in order to trigger Homeward's verification obligations.  According to the Complaint, Homeward's omission of reference to the "in writing" requirement in the July 19 verification notice was both a substantive violation of § 1692g(a)(4) and a false, deceptive or misleading representation in violation of § 1692e.

---

[2]   In relevant part, § 1692g(a)(4) provides that "[w]ithin five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall … send the consumer a written notice containing … a statement that if the consumer notifies the debt collector ***in writing*** within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt …."  *Id.* (emphasis added).  Section 1692e forbids debt collectors from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt."  (*Id.*)  Plaintiff's position is that Homeward (i) violated § 1692g(a)(4) by failing to specify that Adams' notice of dispute must be in writing for Homeward's verification duties to attach, and (ii) violated § 1692e in the July 19 Letter by misstating the particulars of Adams' statutory dispute and verification rights (via omission of the "in writing" proviso for Adams' dispute notification to trigger verification rights under the FDCPA).

Although the parties are presently engaged in discovery, Homeward moved for dismissal or, alternatively, summary judgment on December 10, 2013 (some four and a half months after it filed an Answer (doc. 5)). In that motion, Homeward emphasizes plaintiff's admission that the July 19 Letter was not Homeward's initial communication to her, and proposes that the Court go beyond the pleadings to consider another letter (the "AHMSI Letter") from a company called American Home Mortgage Servicing, Inc. ("AHMSI") to Adams dated January 23, 2009. (*See* doc. 20, Exh. A.)[3] Homeward's Motion devotes scant attention to whether the AHMSI Letter may properly be considered on a Rule 12(b)(6) motion. Instead, Homeward simply offers a cursory statement that it is moving in the alternative for summary judgment, without examining whether converting the motion would be appropriate in these circumstances. Because it informs both the legal framework and the factual parameters of the Court's inquiry, the conversion question forms the starting point for the undersigned's analysis.

**II. Analysis.**

### *A. The Rule 12(b)(6) Motion Will Not Be Converted into a Rule 56 Motion.*

It is black-letter law, of course, that a court weighing a motion filed pursuant to Rule 12(b)(6) is generally confined to the four corners of the pleadings. *See, e.g., Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009) ("A court's review on a motion to dismiss is limited to the four corners of the complaint.") (citation and internal quotation marks omitted); *Thaeter v. Palm Beach County Sheriff's Office*, 449 F.3d 1342, 1352 (11th Cir. 2006) ("When considering a motion to dismiss, … the court limits its consideration to the pleadings and exhibits attached thereto.") (citation omitted). To be sure, there are limited exceptions.[4]

---

[3] The AHMSI Letter purports to inform Adams that "[e]ffective February 11, 2009, the servicing of your mortgage account, that is, the right to collect payments from you, will be transferred from Citi Residential Lending to AHMSI." (Doc. 20, Exh. A, at 1.) On the reverse of the AHMSI Letter is an "Account Status Notice" specifying that "[i]f, within 30 days of receiving this notice, you notify AHMSI *in writing* that you dispute the validity of this debt or any portion of the debt, AHMSI will obtain verification of the debt and a copy of such verification will be mailed to you." (*Id.* at 2 (emphasis added).) For purposes of this Order, the Court assumes (without deciding) that AHMSI was a predecessor of Homeward.

[4] *See, e.g., Starship Enterprises of Atlanta, Inc. v. Coweta County, Ga.*, 708 F.3d 1243, 1252 n.13 (11th Cir. 2013) ("Although analysis of a Rule 12(b)(6) motion is limited primarily to the face of the complaint and attachments thereto, a court may consider documents attached to the motion to dismiss if they are referred to in the complaint and are central to the (Continued)

However, Homeward has not argued that those exceptions apply, and independent review reveals no basis for invoking them here.

The procedural wrinkle here is created by Homeward's reliance in its Motion to Dismiss on the AHMSI Letter, which is not referenced in, part of, or central to the Complaint. Because matters outside the pleadings are generally not properly considered on a motion to dismiss, and because Homeward has failed to identify any exception that might encompass it, the AHMSI Letter may be examined at this time only if the motion to dismiss is converted into a summary judgment motion. The Federal Rules of Civil Procedure provide for such a maneuver, as follows: "If, on a motion under Rule 12(b)(6) …, matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Rule 12(d), Fed.R.Civ.P.; *see also Day v. Taylor*, 400 F.3d 1272, 1275-76 (11th Cir. 2005) ("The district court generally must convert a motion to dismiss into a motion for summary judgment if it considers materials outside the complaint."). It is not mandatory that the Court consider the AHMSI Letter and convert the motion into one for summary judgment simply because defendant so requested. Rather, the decision of whether or not to do so is a matter of discretion.[5]

As plaintiff correctly observes, the trouble with converting Homeward's Rule 12(b)(6) Motion into a Rule 56 Motion is that Adams has not had the benefit of discovery. "The law in this circuit is clear: the party opposing a motion for summary judgment should be permitted an adequate opportunity to complete discovery prior to consideration of the motion." *Jones v. City of Columbus, Ga.*, 120 F.3d 248, 253 (11th Cir. 1997) (citations omitted). That said, it is not a prerequisite that <u>all</u> discovery be completed before summary judgment is entertained. *See*

---

plaintiff's claim."); *Financial Sec. Assur,, Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1284 (11th Cir. 2007) ("This court recognizes an exception, however, in cases in which a plaintiff refers to a document in its complaint, the document is central to its claim, its contents are not in dispute, and the defendant attaches the document to its motion to dismiss.").

[5] *See Harper v. Lawrence County, Ala.*, 592 F.3d 1227, 1232 (11th Cir. 2010) ("A judge need not convert a motion to dismiss into a motion for summary judgment as long as he or she does not consider matters outside the pleadings."); *Jones v. Automobile Ins. Co. of Hartford, Conn.*, 917 F.2d 1528, 1531-32 (11th Cir. 1990) ("It is within the judge's discretion to decide whether to consider matters outside of the pleadings that are presented to the court.").

*Florida Power & Light Co. v. Allis Chalmers Corp.*, 893 F.2d 1313, 1316 (11th Cir. 1990) ("The district court is not required to await the completion of discovery before ruling on a motion for summary judgment."). In fact, the Eleventh Circuit has counseled that "we expect that district judges will be open" to Rule 56 motions filed "at an early stage of the litigation if the moving party clearly apprises the court that a prompt decision will likely avoid significant unnecessary discovery." *Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1188 (11th Cir. 2005). Here, however, Adams has shown that she reasonably requires discovery from Homeward on various topics in order to respond to any summary judgment motion.[6] In light of these equitable considerations, the Court will exercise its discretion not to convert Homeward's Rule 12(b)(6) Motion into a Motion for Summary Judgment. *See, e.g., Snook v. Trust Co. of Georgia Bank of Savannah, N.A.*, 859 F.2d 865, 870 (11th Cir. 1988) ("If the documents or other discovery sought would be relevant to the issues presented by the motion for summary judgment, the opposing party should be allowed the opportunity to utilize the discovery process to gain access to the requested materials."); *Hardy v. Ambika, LLC*, 2010 WL 4636636, *1 (S.D. Ala. Nov. 3, 2010) (declining to convert motion to dismiss into summary judgment motion where "it would be unfair and inappropriate" to do so without first allowing plaintiff to conduct relevant discovery).

For these reasons, defendant's alternative Motion for Summary Judgment (doc. 20) is **denied**, without prejudice to defendant's ability to renew such motion at an appropriate time after plaintiff has received an adequate opportunity to discover relevant information. In light of this determination, the Court will evaluate Homeward's Motion to Dismiss pursuant to Rule

---

[6] For example, Homeward touts the AHMSI Letter as the "initial communication with [Adams] in connection with the collection of any debt" for purposes of § 1692g. But is it? That might depend, at least in part, on myriad factual issues, such as the timing and nature of other communications between AHMSI and Adams, the relationship between AHMSI and Homeward, the nature and content of notification to debtors about the name change to Homeward, and so on. Plaintiff is not required for summary judgment purposes to accept on faith defendant's contention that the AHMSI Letter constitutes the initial communication under § 1692g; rather, plaintiff is entitled to investigate that allegation via discovery before being forced to respond to defendant's representations about what material facts are and are not undisputed. Likewise, plaintiff is entitled to discovery on, among other things, all of AHMSI/ Homeward's communications with her in order to assess whether the July 19 letter, taken in context, was misleading or deceptive so as to support her FDCPA cause of action under § 1692e.

12(b)(6), affording no consideration to the extrinsic exhibit (*i.e.*, the letter from AHMSI to Adams dated January 23, 2009, and attached to the Motion as Exhibit A).

### B. Plaintiff Has Not Pleaded Sufficient Facts to Show a Violation of § 1692g.

To withstand Rule 12(b)(6) scrutiny and satisfy Rule 8(a), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face," so as to "nudge[] [her] claims across the line from conceivable to plausible." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (citation omitted). "This necessarily requires that a plaintiff include factual allegations for each essential element of his or her claim." *GeorgiaCarry.Org, Inc. v. Georgia*, 687 F.3d 1244, 1254 (11th Cir. 2012). Thus, minimum pleading standards "require[] more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. As the Eleventh Circuit has explained, *Twombly / Iqbal* principles require that a complaint's allegations be "enough to raise a right to relief above the speculative level." *Speaker v. U.S. Dep't of Health and Human Services Centers for Disease Control and Prevention*, 623 F.3d 1371, 1380 (11th Cir. 2010) (citations omitted).

As noted, the First Amended Complaint purports to assert a FDCPA claim against Homeward for violation of § 1692g(a)(4), which obligates a debt collector within five days after initial communication in connection with collection of a debt, to notify the consumer of her statutory verification rights. Such written notice (sometimes called a "validation notice" or "verification notice") must state that the verification right is triggered when "the consumer notifies the debt collector in writing" within 30 days that all or part of the debt is disputed. *See* 15 U.S.C. § 1692g(a)(4). According to the Complaint, Homeward violated § 1692g(a)(4) by sending Adams a letter dated July 19, 2012 that failed to apprise her that any notice of dispute must be <u>in writing</u> to entitle her to those FDCPA protections.

In its Motion to Dismiss, Homeward focuses on the "initial communication" limitation of § 1692g(a)(4). By its terms, the statute does not obligate a debt collector to send the § 1692g validation notice in each and every communication; rather, the debt collector must only do so "[w]ithin five days after the initial communication with a consumer in connection with the collection of any debt." 15 U.S.C. § 1692g(a); *see also Paris v. Steinberg & Steinberg*, 828 F.

Supp.2d 1212, 1222 (W.D. Wash. 2011) (in drafting § 1692g, "Congress contemplated only one initial communication with a debtor on a given debt"); *Senftle v. Landau*, 390 F. Supp.2d 463, 473 (D. Md. 2005) ("The Court thus holds that there is only one 'initial communication' with a debtor on a given debt under § 1692g(a) ...."). Following that initial communication and validation notice, subsequent communications with a debtor need not reiterate the validation notice provisions of § 1692g(a).[7]

The defect in Adams' § 1692g(a)(4) claim, as pleaded in the Complaint, is that it alleges no facts lending facial plausibility to such a claim, as required to withstand a *Twombly* analysis. The Complaint alleges that the July 19 Letter violates § 1692g(a)(4), even as Adams admits that "[t]his letter was not Homeward's initial communication with Plaintiff." (Doc. 19, ¶ 15.) If, as plaintiff concedes, the July 19 Letter was not an "initial communication," then under the foregoing authorities and the plain statutory language, that letter was not subject to the notification requirements of § 1692g(a)(4). Indeed, plaintiff's allegations in the Complaint demonstrate that the July 19 Letter could not have violated § 1692g(a)(4) because (i) the July 19 Letter was not an initial communication in connection with the collection of a debt, and (ii) the statute requires a validation notice only upon transmission of an initial communication. In *Twombly* vernacular, the Complaint does not allege specific facts allowing a reasonable inference that Homeward violated § 1692g(a)(4). From a careful reading of the Complaint, we have no idea what Homeward's "initial communication" with Adams was, much less whether that initial communication did or did not comport with the notification provisions of § 1692g(a). We know only that the communication on which Adams relies, and which she attaches to her

---

[7] *See, e.g., Weiss v. Zwicker & Associates, P.C.*, 664 F. Supp.2d 214, 217 (E.D.N.Y. 2009) (June 28 letter did not violate § 1692g(a) of FDCPA because initial communication was March 26 letter, such that defendant "had no obligation in the June 28th Letter to remind" debtor of his rights); *Dikun v. Streich*, 369 F. Supp.2d 781, 788 (E.D. Va. 2005) (dismissing § 1692g(a) claim alleging that defendant failed to include validation notice in letter dated June 10, 2004, where "the June 10, 2004 letter was not the initial communication from the Defendants"); *Flores v. Millenium Interests, Ltd.*, 273 F. Supp.2d 899, 900 (S.D. Tex. 2003) ("After the December 2000 letter, Flores had been notified of his rights to dispute the debt; Concord did not have to include the required information in further communications."); *Higgins v. Capitol Credit Services, Inc.*, 762 F. Supp. 1128, 1134 (D. Del. 1991) ("because the March 29 notice was the initial communication, defendant was not obligated to disclose *any* of the consumer's section 1692g(a) rights in the April 12 notice").

pleading, was not an initial communication and therefore was not subject to § 1692g(a).[8] Plaintiff having failed to plead facts moving this claim from the conceivable to the plausible, Adams' FDCPA claim for violation of § 1692g(a)(4) fails to state a claim upon which relief can be granted, and is therefore **dismissed** pursuant to Rule 12(b)(6).

   *C.    Defendant's Motion Does Not Adequately Address the § 1692e Claim.*

That said, a plain reading of the Complaint shows that Adams' FDCPA claims are not confined to § 1692g(a)(4). That pleading also alleges that the July 19 Letter "is deceptive in that it mischaracterizes the dispute and verification rights granted a consumer under the FDCPA in violation of 15 U.S.C. § 1692e." (Doc. 19, ¶ 21.) The Complaint reflects plaintiff's position that the July 19 Letter is a mischaracterization of Adams' FDCPA rights because it fails to mention that her notice of dispute must be <u>in writing</u> in order to trigger Homeward's statutory verification obligations.[9] Building on that allegation, Count One of the Complaint states, "Homeward has violated the FDCPA in connection with its attempts to collect the account against Plaintiff. Homeward's violations include … misrepresenting the dispute rights of consumers under the FDCPA in violation of 15 U.S.C. § 1692e." (Doc. 19, ¶ 25.) Again, that section generally prohibits debt collectors from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. So, plaintiff has clearly

---

[8] To be sure, Adams alleges in her pleading that "for several months prior Homeward sent Plaintiff other letters containing the same language." (Doc. 19, ¶ 15.) But this conclusory statement is unhelpful. Plaintiff does not allege any facts supporting an inference that any letter in that chain of "several months" qualified as an "initial communication" for § 1692g(a) purposes, but would apparently have the Court guess that such is the case. *Twombly* principles forbid such a speculative construction of the Complaint based on facts that plaintiff has not alleged to exist.

[9] In other words, under the validation notice as set forth in the July 19 Letter, Adams could be misled into thinking that if she disputed the debt telephonically (rather than in writing), Homeward would have to verify the debt, when in fact the FDCPA would impose no such obligation on Homeward unless her dispute was communicated in writing. What's more, plaintiff maintains, by suggesting that a consumer's notification of a debt dispute need not be in writing to activate Homeward's verification duties, the July 19 Letter would mislead the debtor into not taking steps to activate additional valuable protections under the FDCPA. *See* 15 U.S.C. § 1692g(b) ("If the consumer notifies the debt collector ***in writing*** within the thirty-day period … that the debt … is disputed, … the debt collector shall cease collection of the debt ….") (emphasis added); doc. 19, ¶ 20.

pleaded a claim in Count One that Homeward violated § 1692e of the FDCPA by engaging in false, deceptive or misleading representations to Adams in the July 19 Letter. The misrepresentations are identified in the pleading as Homeward's incorrect statement that a dispute of the debt did not have to be in writing to activate Adams' verification rights.

Defendant's Motion to Dismiss largely overlooks the § 1692e component of Adams' FDCPA cause of action. Homeward's Motion does not argue that the July 19 Letter is compliant with § 1692e. Nor does the Motion identify any authority to support the (unarticulated) proposition that omission of the "in writing" requirement in the July 19 Letter's validation notice does not constitute a "false, deceptive, or misleading representation" for § 1692e purposes. Instead, the sum total of Homeward's discussion of this claim in its Motion to Dismiss is as follows: "Plaintiff contends that within five days of its initial contact, a debt collector must send a consumer a notice of her rights under 15 U.S.C. § 1692g, and failure to do so is a misrepresentation rising to the level of a violation of the FDCPA." (Doc. 20, at 3.) But this statement (which would collapse both prongs of Count One into a single analysis) misconstrues Adams' theory of relief on her § 1692e claim. By the plain terms of the Complaint, Adams contends that Homeward violated § 1692e not by failing to provide a validation notice at all, but by materially misstating the law in the notice it provided on July 19. Defendant's Motion does not recognize this important distinction, but unhelpfully attacks a FDCPA claim that plaintiff never even brought.

A fair reading of the Motion to Dismiss thus gives no inkling as to why Homeward believes it is entitled to Rule 12(b)(6) relief on Adams' § 1692e claim as it is actually pleaded in the Complaint. For example, the Motion is silent as to such matters as (i) whether (and, if so, on what legal basis) Homeward contends that the July 19 Letter does not misstate FDCPA's validation notice language by omitting the "in writing" requirement; (ii) whether (and, if so, on what legal basis) Homeward contends that any such misstatement in the July 19 Letter does not constitute a violation of § 1692e; or (iii) whether (and, if so, on what legal basis) Homeward asserts that any misrepresentation in the July 19 Letter was offset, neutralized, or counteracted as a matter of law by some other communication from AHMSI/Homeward at some other time, so as not to be actionable under § 1692e. In short, the Motion to Dismiss does not articulate any

colorable ground for dismissing Adams' § 1692e claim under Rule 12(b)(6). The Motion to Dismiss is therefore **denied** as to that portion of Count One.[10]

### III. Conclusion.

For all of the foregoing reasons, defendant's Motion to Dismiss or, Alternatively, Motion for Summary Judgment (doc. 20) is **granted in part**, and **denied in part**, as follows:

1. The Motion is **denied** insofar as it is postured as a Motion for Summary Judgment. The Court declines to convert the Rule 12(b)(6) Motion into a Rule 56 Motion at this early stage, without affording plaintiff a reasonable opportunity for discovery as to material matters. Denial of the Motion for Summary Judgment is without prejudice to defendant's ability to renew such motion at an appropriate time after an appropriate opportunity for plaintiff to obtain relevant discovery.

2. The Motion to Dismiss is **granted** with respect to plaintiff's claim for violation of 15 U.S.C. § 1692g. The Complaint fails to recite sufficient facts to state a plausible claim that defendant violated § 1692g's notice requirements within five days after its initial communication, because the subject correspondence identified in the Complaint is admittedly not an "initial communication" for FDCPA purposes. As framed then, plaintiff's pleading offers no facts that, accepted as true, would make a plausible showing that defendant did not comply with the § 1692g notice provisions as to its "initial communication" with her. Plaintiff's §

---

[10] To the extent that Homeward would attempt to shore up this omission in its reply brief, such an endeavor is misplaced. Federal courts generally do not consider new arguments presented for the first time in a reply brief. *See, e.g., Windham v. City of Fairhope*, 2013 WL 1679355, *8 n.13 (S.D. Ala. Apr. 16, 2013) ("federal courts generally do not consider new, previously available arguments unveiled in reply briefs"); *Apex/FCC, LLC v. FlexiCrew Staffing, Inc.*, 2012 WL 5398803, *4 (S.D. Ala. Nov. 1, 2012) ("as a new argument raised for the first time in a reply brief, it is improper"); *Gross-Jones v. Mercy Medical*, 874 F. Supp.2d 1319, 1320 n.8 (S.D. Ala. 2012) ("District courts, including this one, ordinarily do not consider arguments raised for the first time on reply."); *see generally Herring v. Secretary, Dep't of Corrections*, 397 F.3d 1338, 1342 (11th Cir. 2005) ("As we repeatedly have admonished, arguments raised for the first time in a reply brief are not properly before a reviewing court.") (internal quotation marks omitted). Having failed in its Motion to Dismiss to identify any basis for opposing the § 1692e claim actually pleaded by Adams, Homeward cannot be heard to unveil such arguments for the first time in a reply brief.

        1692g claim is **dismissed** for failure to state a claim upon which relief can be granted.

3.     The Motion to Dismiss is **denied** with respect to plaintiff's claim for violation of 15 U.S.C. § 1692e. The Motion mischaracterizes this claim and does not advance any legal basis for defendant's apparent contention that it fails to state a claim upon which relief can be granted.

4.     To the extent that the parties spar in their briefs about claims that are not presented on the face of the Complaint (*i.e.*, whether the AHMSI Letter does or does not comply with 15 U.S.C. § 1692e(11), whether the July 19 Letter contradicts or overshadows the AHMSI Letter, and so on), the Court has disregarded those arguments because they concern hypothetical causes of action that have not properly been asserted. The only claims joined in this lawsuit are those particular causes of action set forth in the pleadings. The Complaint does not reveal any claims by Adams predicated on the AHMSI Letter (either its purported FDCPA non-compliant status or its alleged inconsistency with other Homeward correspondence). As a matter of well-settled law, plaintiff cannot amend her pleadings via memorandum of law filed in response to a dispositive motion.[11]

DONE and ORDERED this 5th day of February, 2014.

                                            s/ WILLIAM H. STEELE
                                            CHIEF UNITED STATES DISTRICT JUDGE

---

[11]   *See generally Miccosukee Tribe of Indians of Florida v. United States*, 716 F.3d 535, 559 (11th Cir. 2013) ("In this circuit, a plaintiff cannot amend his complaint through argument made in his brief in opposition to the defendant's motion …. We therefore decide the Tribe's appeal of the Count IV judgment by assessing the record in the light of Count IV's allegations, as stated in the complaint."); *GeorgiaCarry.Org*, 687 F.3d at 1258 n.27 ("It is well-settled in this circuit that a plaintiff may not amend the complaint through argument at the summary judgment phase of proceedings.").